## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### OGLESBY'S EX'X v. HUGHES AND OTHERS.

#### JUNE 23, 1898.

1. MINING LEASE—*Agreement of Parties as to Construction of Lease—How Treated by Courts.*—In a suit to rescind a mining lease where the bill charges, and the answer admits, that the lease was terminable at the will and pleasure of either party, it will be so treated, and the lease held to have been terminated by the institution of the suit.

2. MINING LEASE—*Terminable at Will—Rights and Liabilities of Lessor and Lessee.*—A mining lease for a period of ten years, terminable at the will of either party during that term, which provides that the lessee shall remove not less than an average of 12,000 tons of ore per year, does not bind the lessee to remove that quantity each year, but only an average of that quantity during the ten years; and if the lease is terminated by the lessor, without fault of the lessee, at an early period of the lease, the lessee is only bound to pay the price agreed for the ore actually mined, and, if he has made advances to the lessor on account of royalties contemplated under the lease, he is entitled to recover of the lessor the amount so advanced less the royalties due by him for ore actually mined.

Appeal from a decree of the Circuit Court of Wythe county pronounced January 18, 1897, in a suit in chancery wherein the appellant's testator was the complainant, and the appellees were the defendants. ·

*Affirmed.*

The opinion states the case.

*I. H. Larew,* for the appellant.

*Walker & Caldwell,* for the appellees.

HARRISON, J., delivered the opinion of the court.

On the 17th of December, 1889, A. M. Oglesby entered into a contract with the appellees by which he leased to them, for the term of ten years, the right to mine the iron ores upon two tracts of land.

The terms of this contract, necessary to be stated, are that the appellees were to pay a royalty of twenty-five cents per ton for all ore mined, and were to remove not less than an average of 12,000 tons per year; they were to pay, and did pay, $3,000 in advance, on account of royalties, which was to be reimbursed them by the royalties on the first 12,000 tons taken out. The lessees were to have all timber on the leased premises necessary for mining purposes, but not to use any timber suitable for rails or lumber. They were to have the right to use the water and wash ores upon the land, but in such cases mud dams or settling ponds were to be constructed and maintained. The contract further provides that in the event of a failure on the part of the lessees to comply with the terms of the lease, they should forfeit all of their rights thereunder, and the agreement and lease become null and void.

It appears from the record that appellees, in pursuance of this contract, proceeded to make preparations for mining, and a large sum of money was spent by them in erecting machinery, houses, tramways, roads, &c., much time being spent in making these necessary preparations for carrying out the contract.

In less than sixteen months from the time the contract was entered into, to-wit, on the 10th of April, 1891, the lessor filed his bill in this case, charging that the lessees were tenants at will, and declaring his purpose to terminate the lease. The bill prays for a rescission of the contract, for an injunction to restrain the lessees from all further operations thereunder, for an account of the ores removed, and the amount due as compensation for certain alleged violations of the contract by the lessees—in using timber not contemplated, in failing to

erect certain mud dams provided for, and in failing to take out 12,000 tons of ore the first year.

The appellees answered the bill, and asked that their answer be treated as a cross-bill. They admit that the lease is an estate at will; that since the filing of the bill by the lessor they have ceased to operate under it, and are making preparations to surrender the property as soon as possible. They say that under the terms of the lease they were not required to remove 12,000 tons of ore each consecutive year; that the lessor having terminated the lease without their consent or fault, they are only chargeable with the amount of the ore actually mined and removed. They deny the allegations of the bill in respect to violations of the contract by them, and insist that they have complied with the terms of the agreement in all things, and have in no way damaged the complainant. They aver that they are ready to account for all ores mined, but allege that the complainant is indebted to them in a large sum on account of money advanced by them in payment for royalties, and on account of damage sustained by reason of the sudden and unwarranted termination of the lease, and they ask that an account may be taken showing the amount due them, and a decree entered therefor.

In response to a decree for an account, a report, based upon the evidence of sundry witnesses, was filed, finding that there had been mined and removed by the lessees 2,297 tons of ore, worth at twenty-five cents per ton $575.32; that there was due the lessees on account of the $3,000 advanced by them on royalties $2,424.65; and that no damages were sustained on either side on account of violations of the contract. All exceptions to this report by appellants were overruled, and a decree entered in accordance with its findings, from which decree this appeal was allowed.

The court is of opinion that the parties having agreed that their contract was intended to be a lease at will, determinable at the pleasure of either party, as admitted in the bill and

answer, it must be so treated, and the lease held to have been determined by the lessor upon the institution of this suit.

The court is further of opinion that the terms of the contract did not require the lessees to remove 12,000 tons of ore each year, but only contemplated that the amount removed during the ten years should average 12,000 tons per year. With the large and expensive preparations that had to be made for such work it would have been unreasonable to expect the lessees to take out as much ore the first year as they could do thereafter, when everything was completed and in good working order.

The court is further of opinion that the lessees were not guilty of violating the terms of their contract as charged in the bill; that the findings of the commissioner in respect to this allegation are sustained by the evidence, and that the appellees have forfeited none of their rights under the contract.

The court is further of opinion that the appellees, having complied with the terms of their contract, and the lease being terminated by the lessor without fault on their part, before they had taken out sufficient ore to reimburse them the amount advanced on account of royalties, they were entitled to recover from the appellants the difference between the amount so advanced and the ore actually removed, at the price per ton provided by the contract.

It follows from these conclusions that there is no error in the decree appealed from to the prejudice of appellant, and it must be affirmed.

*Affirmed.*